[No. 9561.   *En Banc.*   August 10, 1911.]

W. E. FRY, *Appellant*, v. JOEL W. THORNE, *Respondent*.[1]

SALES—OPTIONS—NATURE OF TRANSACTION—CONSTRUCTION BY PAR-
TIES—CORPORATE STOCK.   The delivery of mining stock to a bank in
escrow under a written agreement directing the delivery of the
stock upon payment of specified sums at stated times, which pay-
ments were to draw interest "if paid," and providing that if the
payments were not made the bank was to return the stock to the
owner, is an option and is not enforcible as a sale by the owner
seeking to recover the purchase price; especially where in contem-
poraneous letters he construed it as an option.

Appeal from a judgment of the superior court for King
county, Yakey, J., entered March 25, 1911, in favor of the

[1]Reported in 117 Pac. 230.

defendant, after a trial on the merits before the court without a jury, in an action for specific performance. Affirmed.

*W. F. Hays*, for appellant.

*Herr, Bayley, Wilson & Smith*, for respondent.

DUNBAR, C. J.—Plaintiff brought this action for the specific performance of an oral contract for the sale of 990,000 shares of the capital stock of the Romance Mining Company of Prescott, Arizona. The complaint alleges, in brief, that he sold to the defendant 990,000 shares of the stock of the Romance Mining Company for $19,800, at Prescott, Arizona, on the 20th day of November, 1908; that on or about May 20, 1909, in accordance with the agreement, which was in writing, the defendant paid $300 on account of the purchase price of said stock, and that no further payments have been made; and prays judgment for the balance claimed to be due. The defendant denied the sale, and alleged other affirmative matters which it is not necessary to set forth. It is claimed by the plaintiff, that he was overreached by the defendant, who, for the purpose of getting rid of the plaintiff, prevailed upon him to resign the management of the corporation, the Romance Mining Company, of which he was at the time director and manager; that as an inducement for selling the stock to the defendant, he agreed to resign, and did resign, as manager and director of said mining company. This contention is flatly disputed by the defendant.

This transaction, it seems from the record, was clearly a written one, and the paper filed is as follows:

"Deed in Escrow, from W. E. Fry, hereinafter called the first party, to Joel W. Thorne, hereinafter called the second party. Total consideration $19,800 with interest as herein below stated.

"To the Bank of Arizona, Prescott, Arizona: This envelope is deposited with you in escrow, subject only to the following instructions: The within papers are to be delivered to the above designated second party, its orders or assigns, upon

demand, if said second party, its agents or assigns, shall deposit with you for the credit and use of the above designated first party the full amount of the total consideration hereinabove written, the title and terms of payment being as follows, to wit."

The times and terms are left blank, and on the face of the paper it is stated: "As designated on the reverse side of this envelope." The paper continuing says:

"But if said payments, or any of them, are not made at the time and in the amounts hereinabove stated, you will accept no further payments and deliver inclosed papers to first party or order on demand. Time being the essence of these instructions."

There are some further immaterial instructions to the bank in relation to the stock inclosed, and the paper is then signed: "W. E. Fry and Joel W. Thorne. November 20, 1908." The outside of the envelope referred to in the body of the instrument sets forth in detail the title and amount of the payments. Then the following is added:

"All payments subsequent to the first two payments above mentioned shall, if made, draw interest at the rate of six per cent per annum from January 1, 1910, until said payments are respectively made, and all such interests shall be paid to the said escrow holder at the time the last payment above mentioned is made.

"(Signed)    Joel W. Thorne.    W. E. Fry."

The pertinent and only question in this case is, Does the instrument filed with the bank constitute a contract of sale or an option for the sale of the mining stock? Many authorities are cited by the appellant and quoted at large to sustain the contention that the instrument constitutes a conract of sale. But while the correctness of the law announced in those authorities cannot be gainsaid, the record in this case does not bring the case within the scope of the principles announced by such authorities.

"An option is a privilege existing in one person, for

16—64 WASH.

which he has paid money, which gives him the right to *buy* certain merchandise or certain specified securities from another person, if he chooses, at any time within an agreed period, at a fixed price, or to *sell* such property to such other person at an agreed price and time." Black's Law Dictionary, page 856.

"An option is a right acquired by contract to accept or reject a present offer within a limited or reasonable time in the future." 21 Am. & Eng. Ency. Law (2d ed.), p. 924.

It seems clear to us that the instrument which was filed with the bank constitutes nothing more than an option. It was contemplated by the parties, as shown by the instrument itself, that all payments might not be made, for it is provided in one of the instructions that all payments subsequent to the first two payments above mentioned shall, *if made,* draw interest. This stock was deposited in the hands of a trustee to be delivered on condition that certain payments were made, and it is as clearly announced that, if the payments were not made according to the terms specified in the instrument, the stock was to be returned to the plaintiff, and the funds which had been paid were to be, and were actually, left to the credit of the plaintiff; that is, the ordinary condition of an option and the ordinary result where a payment is made and a deed or title to the property is to be made upon the payment as provided for in the contract. The conditions are so plain that it is difficult to construe the contract. It provides for partial payments, and what shall happen in the event of failure to make the balance of the payments at the time specified. In addition to this, the construction placed upon the contract itself by the parties to the contract may be considered. In a letter written by the appellant to the respondent on March 22, 1909, in referring to this contract, among other things, he states:

"I am satisfied, if you do not take up my option, that I can sell your interest and mine to that mill crowd. The engineer is an old New York man and a fine fellow."

Again, in a letter addressed to the Romance Mining Company, November 20, 1908, it is said:

"I have this day given to Joel W. Thorne an option upon all of the capital stock of your company now owned by me, for the consideration of $19,800, payable as follows: [setting forth the payments.] I have agreed with Mr. Thorne that I will resign as general manager of your company during the entire period for which the aforesaid option is in force. Therefore, in consideration of the facts as above stated, I do hereby resign as general manager of your company, the same to take effect immediately and continue in effect so long as the said option shall remain in full force and virtue and the payments thereby provided for are made. This resignation is to become absolute when the total consideration provided for in such option is fully paid. But if default is made in making any payments provided for in said option, this resignation shall thereby and thereupon become of no effect.

"Respectfully submitted, W. E. Fry."

It would seem that the contract, when construed in connection with the expressed construction placed upon the transaction by the plaintiff, would leave little to be said in favor of his contention that this contract constituted a contract of sale instead of an option.

The judgment is affirmed.

CHADWICK, MOUNT, GOSE, ELLIS, CROW, MORRIS, and FULLERTON, JJ., concur.